**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
 *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
 *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
 *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
*Attorneys for Plaintiff Shavonne Geddis-Wright*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SHAVONNE GEDDIS-WRIGHT, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>      Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shavonne Geddis-Wright, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Defendant American Honda Motor Company ("Honda" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically

pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.     Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.     Plaintiff brings this action on behalf of herself and all similarly situated persons who purchased or leased any 2020-2021 Honda Civic, 2020-2023 Honda Ridgeline, 2021-2023 Honda Passport, 2021-2022 Honda Pilot, and 2020 Acura MDX vehicles ("Class Vehicles").

3.     This action is brought to remedy various violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.     Specifically, these Class Vehicles have malfunctions regarding their brake systems in which the tie rod fasteners of the vehicle become loosened which in turn causes a brake malfunction ("Brake System Defect").[1]

5.     In early July of 2023, Honda recalled nearly 125,000 of the above referenced Class Vehicles ("Recall").[2]

6.     The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

---

[1] https://www.caranddriver.com/news/a44475030/honda-acura-brake-recall/
[2] Id.

CLASS ACTION COMPLAINT                    2

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.      This Court has personal jurisdiction over Defendant because Defendant's headquarters and principal place of business is located within this District.

9.      Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that Defendant's headquarters and principal place of business is in this District. Defendant sells and distributes their vehicles throughout the United States and within this District.

## PARTIES

10.      Shavonne Geddis-Wright is a citizen of the State of South Carolina and resides in Vance, South Carolina. Vance is located within Orangeburg County, South Carolina.

11.      In November 2020, Plaintiff purchased her 2020 Honda Civic from Stokes Honda of North Charleston, South Carolina.

12.      Based on Honda's active and persistent promotions touting the quality of its vehicles and her admiration of Honda Accord vehicles, Plaintiff considered Honda a quality company with a strong reputation for producing reliable vehicles.

13.      In addition to Honda's reputation through its marketing and promotion, Plaintiff decided on the 2020 Honda Civic because she believed it was a high-quality

vehicle after a salesman convinced her that the vehicle was highly reliable and came with great technological features at a more affordable price than the Honda Accord.

14.    Since purchasing her 2020 Honda Civic, Plaintiff has only taken the vehicle to the same dealership, Stokes Honda, for its routine maintenance as recommended by both the vehicle alert system and the Service Department at Stokes Honda.

15.    However, through Plaintiff's consistent visits to Stokes Honda of North Charleston's Service Department, she has never been told of any recalls or defects related to her vehicle's brake system. Plaintiff only recalls receiving notice of a recall related to her vehicle's Air Conditioning ("AC") System.

16.    Defendant is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of South Carolina. Defendant's Corporate Headquarters are located at 1919 Torrance Boulevard, Torrance, California 90501.

17.    Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide and in South Carolina. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

18.    Defendant, through various entities, markets, distributes, warrants, and sells Honda automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including South Carolina.

## FACTUAL ALLEGATIONS

19.    Since 2020, Defendant has designed, manufactured, distributed, sold, and leased the Class Vehicles. Defendant has sold, directly or indirectly, through

CLASS ACTION COMPLAINT                    4

dealers and other retail outlets, over one hundred thousand Class Vehicles in South Carolina and nationwide.[3]

20.    As discussed earlier and in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the Brake System.

21.    In more detail, the Class Vehicle's "problem stems from improper assembly of the tie rod fastener that connects the brake master cylinder and the brake booster."[4] During the application of the brake pedal, a bending load may occur upon the brake booster assembly tie rod studs. As a result, the tie rod studs may break, leading to the brake master cylinder separating from the brake booster assembly and a failure to comply with Federal Motor Vehicle Safety Standards (FMVSS) 135 – Light vehicle brake systems.[5]

22.    The defective braking systems and tie rod of the Class Vehicles malfunctions within the first two years of its lifespan, whereas the expected life span of the tie rod part is 70,000 to 100,000[6] miles or 5 to 7 years.[7]

23.    Another critical element of the braking system, the master cylinders, are expected to last as long as the vehicle.[8]

24.    Moving further into the schematics of the braking system, brake boosters are also expected to last as long as the vehicle does, barring exigent circumstances.[9]

---

[3] https://www.caranddriver.com/news/a44475030/honda-acura-brake-recall/
[4] Id.
[5] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V458-1736.PDF
[6] https://www.automotivist.com/how-long-do-tie-rods-last/
[7] https://www.caranddriver.com/auto-loans/a32880477/average-mileage-per-year/#
[8] https://www.hansmaautomotive.com/tips/2022/8/5/when-do-you-need-brake-master-cylinder-replacement
[9] https://www.yourmechanic.com/article/how-long-does-a-hydraulic-brake-booster-last#:~:text=Generally%2C%20the%20hydraulic%20brake%20booster,and%20having%20to%20be%20replaced.

25.   As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering or design.

26.   Nearly 125,000 of the Class Vehicles with defective brake systems have been sold in America.[10]

27.   The result of Defendant's recall, which includes a free fix and repair clause in which Defendant will repair and replace the faulty parts, will cost Plaintiff hours of her time. This is due to the time spent on repairing brakes, which can take up to four hours but no less than thirty minutes.[11]

28.   Defendant's Recall is concerning because it does not offer any foreseeable guarantee that the Brake Defect will go away permanently. Rather, the Recall mentions replacing a fastener that has become loose.[12] The Recall does not give any detail on what causes this fastener to become loose to start with, other than mentioning some possible part manufacturing concerns, which even when remedied several years ago by Defendant, still did not fix the Brake Defect.[13]

29.   Even if one was to presume that the Recall was effective and offered a true fix, which is by no means a fair presumption, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of faulty brakes is worth much less than a car with properly working brakes, or at least a history of working brakes with no critical issues.

30.   Given the above, there is a cognizable risk inherent within this Recall. Unless Defendant is to issue a more comprehensive recall to truly fix the root cause of the Brake Defect, it is foreseeable, and should be expected, that the Class

---

[10] https://www.caranddriver.com/news/a44475030/honda-acura-brake-recall/
[11] https://www.autobutler.co.uk/jobs/brake-repair-and-replacement/brake-booster
[12] https://www.usatoday.com/story/money/cars/2023/07/05/honda-recall-civic-pilot-acura-mdx-ridgeline-passport/70383085007/
[13] https://www.carscoops.com/2023/07/honda-recalls-over-120000-cars-for-potential-brake-failure/

CLASS ACTION COMPLAINT                    6

Vehicles' braking systems will fail once again. Defendant's Recall is no more than a repeatedly ineffective waste of time as there is no true fix for the Brake Defect.

31.    Further, if one tie rod fastener has become loose, as mentioned above, there is no proposed stoppage related to all of the other tie rod fasteners becoming loose as well. Honda purported to solve the problem nearly two years ago through its manufacturer, but this was an inaccurate statement by Defendant.[14] In simple terms, Defendant does not appear to truly know what is wrong with its vehicles.

32.    In all, Defendant's Recall leaves more questions than answers regarding the Class Vehicles' safety and braking system and as such results in a diminution in value for the vehicles in question.

33.    Transitioning back to the repair itself, at a bare minimum, this thirty-minute repair time means that it will take Defendant 62,500 hours to repair the Class Vehicles. In a more comprehensible term, 62,500 hours amounts to a little more than seven years.

34.    In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport herself and her defective Class Vehicle to a Honda certified mechanic. For Plaintiff, this service center is Stokes Honda in North Charleston and her commute begins at her home in Orangeburg County. Plaintiff's repair-related commute is roughly a sixty-mile, one hour, one way, trip via Interstate 26.[15] Although one may traditionally think that this interstate trip would be a quick and efficient trip, it is often not. Interstate 26 is

---

[14] Id.

[15] https://www.google.com/maps/dir/Orangeburg,+SC/Stokes+Honda+North,+Rivers+Avenue,+North+Charleston,+SC/@32.7815491,-81.2537016,9z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x88f8d5a4b4b7499b:0x65fa47a15624bc49!2m2!1d-80.8556476!2d33.4918203!1m5!1m1!1s0x88fe6170329636f3:0xc1f53273f92d15ec!2m2!1d-80.0429333!2d32.9645855?entry=ttu

notable for its outdated size and overwhelming traffic flow, which has resulted in massive road construction, causing delays and even fatalities.[16][17]

35.    Given the math above, Plaintiff may spend up to six hours, but no less than two and a half hours, in repairing her Class Vehicle.

36.    In addition to the sheer amount of time spent in repairing her vehicle, Plaintiff is faced with another difficult expense, the price of towing her vehicle. The average cost of towing, per mile, is $4.75 per mile.[18] Given Plaintiff's roughly 60-mile commute, this cost amounts to $285 taken from Plaintiff for her own Class Vehicle to be safely repaired.

37.    Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff's total time spent on her vehicle amounts to three hours, unless of course one is to assume that Plaintiff drives her potentially unstoppable Class Vehicle to the dealership.[19]

38.    In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

1. **Nationwide Class:** All persons in the United States who purchased or leased any 2020-2021 Honda Civic, 2020-2023 Honda Ridgeline,

---

[16] https://thetandd.com/news/local/watch-now-s-c-kicks-off-2-billion-i-26-widening-project-mcmaster-commerce-is/article_3314dca9-af8f-556b-957b-27ab3b18d799.html

[17] https://www.postandcourier.com/archives/deadly-stretch-of-i-26-to-get-study-reducing-number-of-deaths-a-prioritydeath-zonesstate/article_b62155d9-834b-5259-8a94-9844873661b1.html

[18] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go.

[19] https://myautomachine.com/how-long-do-tow-trucks-take/

CLASS ACTION COMPLAINT    8

2021-2023 Honda Passport, 2021-2022 Honda Pilot, and 2020 Acura MDX vehicles.

2.

3. **South Carolina Subclass:** All persons from South Carolina who purchased or leased any 2020-2021 Honda Civic, 2020-2023 Honda Ridgeline, 2021-2023 Honda Passport, 2021-2022 Honda Pilot, and 2020 Acura MDX vehicles.

40.     Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

41.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

42.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

43.     The proposed class definitions in ¶ 39 as limited by ¶ 40˙ may be amended or modified from time to time.

44.     The particular members of the (i) Nationwide Class, and (ii) South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

45.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

CLASS ACTION COMPLAINT                    9

46.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

47.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

48.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

49.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Brake System Defect found in all other Class Vehicles.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

50.     Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

51.     A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members and questions of law and fact common to all class members predominate over questions affecting only individual class members. Class members can be readily identified and notified

CLASS ACTION COMPLAINT                    10

based on, inter alia, Defendant's business records or other sources including those from the state of South Carolina.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

52.    Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.    Whether Class Vehicles contain the alleged Brake System Defect;

b.    Whether the Brake System Defect would be considered material by a reasonable consumer;

c.    Whether the Brake System Defect would constitute an unreasonable safety risk;

d.    Whether Defendant had a duty to disclose the Brake System Defect to Plaintiff and other Class members;

e.    Whether Defendant knew or reasonably should have known of the Brake System Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

f.    Whether the Brake System Defect has diminished the value of the Class Vehicles;

g.    Whether the Brake System Defect is capable of being repaired;

h.    Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Brake System Defect;

i.    Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective engine parts;

CLASS ACTION COMPLAINT                                11

j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendant breached its express warranties under state law and/or the UCC

l.  Whether Defendant is liable for fraudulent omission;

m.  Whether Defendant was unjustly enriched;

n.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

## COUNT I

## BREACH OF EXPRESS WARRANTY

53.  Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

54.  Plaintiff brings this count on behalf of herself and the Class.

55.  Plaintiff and other Class members formed a contract with Defendant at the time they purchased their Class Vehicles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

56.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Class Vehicles' packaging and through marketing and advertising, as described above.

57.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

58.  As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Vehicles are safe and reliable for their intended use.

CLASS ACTION COMPLAINT

59.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Vehicles.

60.    Defendant breached express warranties about the Class Vehicles and their qualities because Defendant's Class Vehicles contained defects and the Class Vehicles do not conform to Defendant's affirmations and promises described above.

61.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

62.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Vehicles are safe for their intended use.

63.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Vehicles.

64.    Defendant breached express warranties about the Class Vehicles and their qualities because Defendant's Class Vehicles contained defects and the Class Vehicles do not conform to Defendant's affirmations and promises described above.

65.    Plaintiff and each of the members of the Class would not have purchased or leased the Class Vehicles had they known the true nature of the Brake System Defect.

66.    As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

67.    Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased a vehicle that is now worthless and unsafe.

CLASS ACTION COMPLAINT                    13

68.     Plaintiff also suffered economic loss in reference to the value of her vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell or trade-in her Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

69.     Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, as well as money, in tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## <u>COUNT II</u>

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

70.     Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

71.     Plaintiff brings this count on behalf of herself and the Class.

72.     Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

73.     The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

74.     Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

75.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

CLASS ACTION COMPLAINT                14

76.    Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain the Brake Defect.

77.    Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the tie rod studs breaking - causing the master cylinder to separate from the brake booster, and in extreme cases, vehicle crash - the Class Vehicles are not fit for their particular purpose of legal transportation and usage. Defendant's Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall continues to replace parts within a defective system with no true bona fide fix to the system that causes the parts to fail.

78.    Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

79.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

80.    Defendant had been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class members and Defendant, and its review of consumer complaints.

81.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with proper braking systems, they would not have purchased the Class Vehicles or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the Brake System Defect, they would not have purchased Class Vehicles.

CLASS ACTION COMPLAINT                    15

82.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

83.    Plaintiff suffered injury in that she purchased a Vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle that has trouble stopping.

84.    Plaintiff also suffered economic loss in reference to the value of her vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell her Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

85.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of her life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that has horrendous trouble stopping and requires hours upon hours of work to properly stop.

## COUNT III

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. § 2301 *ET SEQ.*)

86.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

87.    Plaintiff brings this Count individually and on behalf of the Class.

88.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

CLASS ACTION COMPLAINT                    16

89.     Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

90.     The Class Vehicles are "consumer products" within the meaning of the MMWA.

91.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

92.     Defendant's express warranties are written warranties within the meaning of the MMWA.

93.     Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the Brake Recall. Defendant's actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the Brake Defect.

94.     Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and the Class Members have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the Brake Defect.

95.     Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Defect.

96.     As a result of these breaches, Plaintiff and the Class have suffered damages.

97.     Plaintiff and the Class seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

CLASS ACTION COMPLAINT                    17

98.    Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

99.    Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles. Regardless of Defendant's free repair, Plaintiff and the Class are still required to spend hours in time and thousands of dollars in bringing their Vehicles to Defendant's dealership for repair.

## <u>COUNT IV</u>

## NEGLIGENT DESIGN DEFECT

100.    Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

101.    Plaintiff brings this claim against Defendant on behalf of herself and Class Members.

102.    Defendant owed Plaintiff and the Class a duty to reasonably and safely design, manufacture, market, and sell the Class Vehicles.

103.    Defendant's breached this duty as the design and manufacture of the Class Vehicles was defective, which caused the cars to not be fit or suitable for their intended purposes. Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Class as the Class Vehicles now are worth less compared to the Class Vehicle's value prior to the existence of the Defect, given the notoriety of the Defect.

104.    Defendant did not exercise due care in the production of the Class Vehicles. Defendant's design horribly malfunctions and many other braking systems exist that do not have this Braking Defect.

105.    Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased a vehicle that is now worthless and unsafe.

106.    Plaintiff also suffered economic loss in reference to the value of her vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell her Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

107.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

108.    The design of the Class Vehicles' defect is unacceptable as other vehicles produced by other companies and manufacturers work properly and do not have this same defect.

109.    Plaintiff's Class Vehicle is in virtually identical condition as to when it left Defendant's factory. Plaintiff has maintained her vehicle through one of Defendant's many official dealerships.

110.    Further evidence of the Class Vehicles poor quality is the workmanship when compared to industry norms for the lifespan of the defective parts of the Class Vehicles, as mentioned earlier.

## <u>COUNT V</u>

## **FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**

111.    Plaintiff incorporates Paragraphs 1-52 as if fully set forth herein.

112.    Plaintiff brings this count on behalf of herself and the Class.

113.    Defendant knew that the Class Vehicles suffered from an inherent defective Brake System, was defectively designed and/or manufactured, and was not suitable for their intended use.

114.    Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

CLASS ACTION COMPLAINT                    19

115.   The fact that Defendant's Class Vehicles contained the Brake System Defect is a material fact as braking systems are one of the most critical safety devices for automobiles.

116.   Defendant was knowledgeable of the falsity of the safety of Braking System Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Brake System Defect.

117.   Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell vehicles.

118.   Plaintiff and Class Members would not have purchased the Class Vehicles had they known of such Braking System Defect. Plaintiff and the Class did not know of such Braking System Defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

119.   Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

    a.  Defendant was in a superior position to know the true state of facts about the Brake System Defect contained in the Class Vehicles;

    b.  The omitted facts were material because they directly impact the safety of the Class Vehicles;

    c.  Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

    d.  Defendant actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

120.   The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle becomes inoperable when the Brake System fails is a material safety concern. Had Plaintiff and Class Members

CLASS ACTION COMPLAINT                    20

known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

121.    Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Class Vehicles to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

122.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

123.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

124.    Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased a vehicle that is now worthless and unsafe.

125.    Plaintiff also suffered economic loss in reference to the value of her vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell her Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

126.   Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT VI

### UNJUST ENRICHMENT

127.   Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

128.   Plaintiff brings this count on behalf of herself and the Class.

129.   Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

130.   Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class members.

131.   Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working brakes in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

132.   The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class members.

133.   Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe, operable, and stoppable. Instead, Defendant sold Vehicles that were truly unstoppable, and thus deadly, given their braking issues. And, rather than refunding or reimbursing Plaintiff and Class Members the difference in value related to the diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than replace defective systems with even more defective systems.

134.   Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII

## NEGLIGENCE

135.   Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

136.   Plaintiff brings this count on behalf of herself and the Class.

137.   Defendant caused Class Vehicles to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Class.

138.   At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Class Vehicles, including the duty to take all reasonable steps necessary to provide effective tie rod fasteners in the Brake Systems in the Class Vehicles.

139.   Defendant breached this duty by providing Class Vehicles with the Brake System Defect. For decades, Defendant has produced other vehicles without this Brake System Defect, which is evidence that Defendant did not exercise proper care in producing the Class Vehicles. Additionally, many other manufacturers produce vehicles with effective braking systems.

140.   Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective Brake Systems could cause or be associated with Plaintiff's and Class Members' injuries.

141.   Defendant's alleged negligence included:

   a.   Selling and/or distributing the Class Vehicles while negligently and/or intentionally not providing effective brake systems; and

b. Systematically failing to provide consumers with effective brake systems in multiple states.

142. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer actual monetary damages.

143. But for Defendant's negligent design, production, and marketing of Class Vehicles, Plaintiff and the Class would not be injured as they would not have purchased the worthless Class Vehicles.

144. Plaintiff's and Class members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class members regarding failure to provide safely and effectively assembled vehicle parts in the Class Vehicles at the time of purchase of Defendant's Product.

145. Further, it is foreseeable that a vehicle with a defective braking system would be worthless as it would be a massively dangerous vehicle to drive. It is also reasonably foreseeable that Defendant's Recall would harm the resale value of the Class Vehicles, given that a car with defective brakes would be worth less to a consumer, when compared to a car with working brakes.

146. As a result of Defendant's breach, Plaintiff and the Class were harmed in that they are now driving with brake-less vehicles, or vehicles whose brakes may fail at any time, given Defendant's confounding lack of due care in its design and product.

147. Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

148. Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased a vehicle that is now worthless and unsafe.

149. Plaintiff also suffered economic loss in reference to the value of her vehicle. As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff and the Class intend to sell their respective Class

CLASS ACTION COMPLAINT                    24

Vehicles, the reputation of being a faulty vehicle will harm the resale value, compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

150.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff and Class Members must also incur time and costs related to towing their Class Vehicles to Defendant's dealerships. Plaintiff and the Class have been greatly inconvenienced by Defendant's Recall.

## COUNT VII

### STRICT LIABILTY: DESIGN DEFECT

151.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

152.    Defendant placed the Class Vehicles into the market for sale to the consuming public.

153.    Defendant knew that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

154.    The Class Vehicles are defective in that they contain the Defect as discussed previously and incapable of adequately stopping and are thus unsafe vehicles.

155.    Plaintiff and the Class have been damaged due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price.

## COUNT VII

### STRICT LIABILTY: MANUFACTURING DEFECT

156.    Plaintiff incorporates paragraphs 1-52 as if fully set forth herein.

157.    This Count is pled in the alternative to the above count of design defect.

CLASS ACTION COMPLAINT                                      25

158.    Defendant caused the Class Vehicles to be sold, and marketed the Class Vehicles to the consuming public.

159.    Along with Class Vehicles, Defendant designs, manufactures, and produces all sorts of other vehicles. Given Defendant's other vehicles are capable of stopping with adequate design and manufacture, it logically follows that the Class Vehicles would share the same fate.

160.    The Class Vehicles presumably are capable of safe operation and stopping as Defendant produces many other vehicles that are capable of such safety and adequate operation. Unfortunately, this presumption is not reality. The Class Vehicles are incapable of stopping.

161.    Class Vehicles contain a defect, as discussed earlier, in which a fastener fails and the vehicle is incapable of stopping due to part separation. This failure of such fastener deviates from the adequate design. But for the failure of the fastener, due to its improper manufacture, the braking system of the Class Vehicles would work.

162.    As a result of this faulty manufacture of such fastener, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

163.    Given the loss of value and lack of safety, Plaintiff and the Class Members have been damaged and will continue to suffer damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

  A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

CLASS ACTION COMPLAINT   26

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: August 23, 2023

By: _/s/ Eric M. Poulin_

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
_eric.poulin@poulinwilley.com_
Blake G. Abbott (_Pro Hac Vice_ Forthcoming)
_blake.abbott@poulinwilley.com_
Paul J. Doolittle (_Pro Hac Vice_ Forthcoming)
_paul.doolittle@poulinwilley.com_
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222

CLASS ACTION COMPLAINT

Fax: (843) 494-5536
*Attorneys for Plaintiff Shavonne*
*Geddis-Wright*